UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

FRANCIS BARRIOS,                                                                                                       Plaintiff,

v.                                                                  Civil Action No. 3:18-cv-132-DJH-RSE

CALEB ELMORE, et al.,                                                                 Defendants.

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Francis Barrios, a former professor at Bellarmine University, alleges that a Bellarmine student, Defendant Caleb Elmore, threatened to kill him and destroy his career. Barrios asserts claims for terroristic threatening, assault, intentional infliction of emotional distress, defamation, and abuse of process against Elmore. (Docket No. 1-3) Barrios also asserts claims for abuse of process and defamation against Elmore's parents, Reza Rashidian and Dayna Elmore. (*Id.*) Caleb Elmore has moved to consolidate this action with another action pending in this district, *Elmore v. Bellarmine University*, Case No. 3:18-cv-53. (D.N. 4) Defendants have moved to dismiss all claims except the terroristic-threatening and assault claims against Caleb Elmore. (D.N. 6; *see* D.N. 1-3) For the reasons set forth below, Caleb Elmore's motion to consolidate will be denied, and Defendants' motion to dismiss will be granted in part and denied in part.

**I.**

Barrios alleges the following facts in the complaint, which the Court will accept as true for purposes of the motion to dismiss. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Caleb Elmore, an undergraduate student at Bellarmine University, worked as a research assistant for Barrios, a chemistry professor at Bellarmine. (D.N. 1-3, PageID # 13-14) In September 2017, Elmore and Barrios met on campus in Barrios's office. (*Id.*, PageID # 14) During the meeting,

1

Elmore advised Barrios that he planned to seek "double credit" for a foreign study program. (*Id.*, PageID # 15) Barrios refused to acquiesce in Elmore's plan. (*Id.*) As a result, Elmore became increasingly hostile toward Barrios, eventually threatening to destroy Barrios's career and to "kill him by taking a knife to his throat." (*Id.*) Elmore's threats left Barrios "shaken and distraught." (*Id.*)

Barrios filed a formal incident report with Bellarmine concerning Elmore's death threats. (*Id.*, PageID # 16-17) In response, Bellarmine opened a formal investigation into the matter. (*Id.*, PageID # 17) Realizing that the investigation could jeopardize his plans to attend medical school, Elmore solicited the help of his parents and filed a sexual-harassment claim against Barrios in order to subvert Bellarmine's investigation into his own conduct. (*Id.*, PageID # 18) At that time, Bellarmine "tabled" the investigation into Elmore's death threats and began an investigation into his sexual-harassment claim against Barrios. (*Id.*) During that investigation, Elmore admitted that the sexual-harassment claim against Barrios was meritless and that it was brought to "divert attention away from" his own misconduct in threatening Barrios's life. (*Id.*, PageID # 20)

Bellarmine's investigators ultimately determined that there was no evidence to support Elmore's claim of sexual harassment. (*Id.*, PageID # 21) Bellarmine nonetheless terminated Barrios's employment after finding that he exchanged inappropriate text messages with Elmore and failed to report Elmore's threats of violence against another faculty member. (*Id.*) Elmore and his parents pressured Bellarmine to "drop" the investigation into Elmore's death threats, but Bellarmine resumed the investigation. (*Id.*) Bellarmine concluded that Elmore had, in fact, threatened violence against two professors. (*Id.*, PageID # 22) Elmore's parents wrote a letter to Bellarmine officials, threatening to sue the university if it took any disciplinary action against their son. (*Id.*) But Bellarmine proceeded to punish Elmore for his threatening conduct. (*Id.*)

Elmore's parents thereafter retained counsel, and Elmore filed suit against Bellarmine. (*Id.*, PageID # 23) Although that lawsuit does not name Barrios as a defendant, it "recounts an elaborate and fictitious tale of alleged sexual harassment" by Barrios and claims that Bellarmine and Barrios "conspired to falsely accuse Elmore of threatening violence" to cover up Barrios's alleged sexual harassment. (*Id.*)

Barrios filed this action in Jefferson Circuit Court (*id.*, PageID # 8), and Caleb Elmore removed it to this Court on March 5, 2018 (D.N. 1). Barrios asserts claims for terroristic threatening, assault, intentional infliction of emotional distress, defamation, and abuse of process against Caleb Elmore and claims for abuse of process and defamation against Elmore's parents, Rashidian and Dayna Elmore. (D.N. 1-3) Caleb Elmore seeks to consolidate this action with his lawsuit against Bellarmine, which is also pending in this district. (D.N. 4) Defendants seek dismissal of the claims for intentional infliction of emotional distress, defamation, and abuse of process pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.N. 6; *see* D.N. 1-3)

**II.**

Federal Rule of Civil Procedure 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).

> A court deciding whether to consolidate actions must consider whether "the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Choi v. Stevenson Co.*, No. 3:08-CV-0057-S, 2011 WL 1625055, at *1 (W.D. Ky. Apr. 28, 2011) (alteration in original) (quoting *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993)).

"Whether to consolidate cases involving the same factual and legal questions is a [matter] within the discretion of the trial court." *Id.* (citing *Cantrell*, 999 F.2d at 1011).

In order to determine whether consolidation of this action with Case No. 3:18-cv-53 is appropriate, the Court must briefly address the factual allegations in that case. In Case No. 3:18-cv-53, Caleb Elmore is suing one defendant, Bellarmine University, for breach of contract, promissory estoppel, and negligence. *Elmore v. Bellarmine Univ.*, Case No. 3:18-cv-53-RGJ-DW, Docket No. 29 (W.D. Ky. Mar. 11, 2018). Elmore also seeks to hold Bellarmine liable under Title IX for sexual harassment and retaliation. *Id.* Specifically, Elmore alleges that Bellarmine (1) maintained a flawed student disciplinary process that led to his placement on academic probation for threatening Barrios, (2) failed to take appropriate remedial action in response to his sexual-harassment complaint against Barrios, and (3) retaliated against him for bringing a sexual-harassment complaint against Barrios. *See id.* By contrast, Barrios alleges in this action that Caleb Elmore threatened him both professionally and personally and that Elmore and his parents defamed him and brought a sexual-harassment complaint against him in order to distract from Bellarmine's investigation into Elmore's threatening behavior. (D.N. 1-3)

The Court finds that although there may be some factual overlap between the two cases, consolidation is not appropriate here. First, the parties involved in the two suits are not the same. Indeed, Caleb Elmore is the only party involved in both suits. It is likely that consolidation will cause the other parties to suffer prejudice in the form of additional costs. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, Nos. 3:13-CV-505-TAV-HBG, 3:13-CV-666-TAV-HBG, 3:14-CV-20-TAV-HBG, 3:14-CV-472-TAV-HBG, 3:15-CV-17-TAV-HBG, 3:15-CV-274-TAV-HBG, 3:15-CV-420-TAV-HBG, 3:15-CV-460-TAV-HBG, 3:15-CV-462-TAV-HBG, 2016 WL 1465363, at *2 (E.D. Tenn. Apr. 14, 2016) ("If the cases were consolidated, therefore, the cost to [a party involved

in only one case] for discovery and motion hearings, among other things, would increase substantially."); *Butz v. Clayton*, No. 2:15-CV-12232, 2016 WL 1253272, at *3 (E.D. Mich. Mar. 31, 2016) (denying motion to consolidate where "an additional party [was] added in the second of the two cases").

Second, the claims raised in each case are legally and factually distinct from those raised in the other. The claims raised in this case concern the actions of Caleb Elmore and his parents, whereas the claims in the other case involve the conduct of Bellarmine—namely, its student disciplinary process and procedures for handling sexual-harassment complaints. The Court finds that consolidation would cause unnecessary confusion given these substantial differences in claims and parties. *See Lewis v. Walker*, No. 3:16-cv-00486-TAV-HBG, 2017 WL 1274094, at *3 (E.D. Tenn. Apr. 4, 2017) (finding that "consolidation would only confuse the jury" where "the cases [were] too dissimilar"); *see also Star Constr. & Restoration, LLC v. Gratiot Ctr. LLC*, Nos. 16-cv-12413, 16-14144, 2017 WL 1021060, at *3 (E.D. Mich. Mar. 16, 2017) (finding that consolidation was not warranted where there was only a "tenuous connection between the legal theories in the two cases"); *Butz*, 2016 WL 1253272, at *3 (denying motion to consolidate where "the two cases involve[d] distinct claims"); *Grigsby v. I-Flow Corp.*, 264 F.R.D. 264, 266 (E.D. Ky. 2009) (denying motion to consolidate where the "differences outweigh[ed] the similarities between the cases").

Moreover, motions to dismiss have been filed in both cases. *Elmore*, Docket No. 30 (W.D. Ky. Mar. 13, 2018). (D.N. 6) The disposition of such motions may render this consolidation request moot. *See Butz*, 2016 WL 1253272, at *3. The Court will therefore deny the motion to

5

consolidate without prejudice.[1]  *See id.*  In the event that both actions survive the motions to dismiss, any party may submit a renewed motion for consolidation.

**III.**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true.  *Id.*  A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss.  *Id.* at 679.

**A.     Intentional Infliction of Emotional Distress (IIED)**

Barrios asserts a claim for intentional infliction of emotional distress against Caleb Elmore. (D.N. 1-3, PageID # 25)  An IIED claim under Kentucky law consists of the following elements:

> (1) the wrongdoer's conduct was intentional or reckless;
> (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
> (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
> (4) the distress suffered must be severe.

---

[1] The Court notes that "discovery efforts can be coordinated by the parties whether or not the actions are formally consolidated." *Adkisson*, 2016 WL 1465363, at *2.  Therefore, the parties may coordinate discovery efforts despite the Court's denial of the motion to consolidate.  *See id.*  Additionally, if both cases proceed, it appears that the discovery in each case will be managed by the same U.S. Magistrate Judge, which may present opportunities for efficient resolution of discovery disputes.

*Bargo v. Goodwill Indus. of Ky., Inc.*, 969 F. Supp. 2d 819, 826 (E.D. Ky. 2013) (citing *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000)). Defendants argue that Barrios's IIED claim should be dismissed because Barrios did not allege "severe or serious emotional injury." (D.N. 6, PageID # 56) Barrios responds that Elmore's threats caused him emotional distress and that a jury should be able to determine whether he can recover. (D.N. 8, PageID # 101)

The complaint alleges that Caleb Elmore "threatened deadly violence" against Barrios during a meeting that took place in his office. (D.N. 1-3, PageID # 14) Specifically, Barrios alleges that Elmore "threatened to kill him by taking a knife to his throat." (*Id.*, PageID # 15) The complaint further alleges that the threat "scared" Barrios and left him "shaken and distraught." (*Id.*) Barrios explained to a colleague that he "feared for his life" and that he "no longer felt comfortable teaching Elmore or working with him." (*Id.*, PageID # 16) The complaint finally alleges that Elmore threatened Barrios "deliberately to inflict emotional and mental distress" and "in an effort to intimidate and strike fear into Dr. Barrios." (*Id.*, PageID # 25)

The Court finds these allegations sufficient at this stage to state a claim for intentional infliction of emotional distress. Barrios has alleged that Elmore threatened him intentionally, i.e., for "the specific purpose of causing emotional distress." (*See id.*) *See Hall v. City of Williamsburg*, No. 6:16-304-DCR, 2017 WL 2274327, at *15 (E.D. Ky. May 24, 2017) (quoting *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012)). The Court finds Elmore's alleged conduct in threatening Barrios's life to be sufficiently outside the bounds of decency to be considered outrageous. *Cf. Jones v. Dalton*, No. 2008-CA-000500-MR, 2009 WL 1160335, at *3-4 (Ky. Ct. App. May 1, 2009) (finding that death threats were not accurately characterized as "insults" or "indignities" insufficient to sustain a claim for IIED). Barrios has also alleged that he suffered emotional distress because of the threat. (*See* D.N. 1-3, PageID # 15) Finally, Barrios has alleged that his

7

emotional distress was severe in that he feared for his life and no longer felt comfortable around Elmore. (*Id.*, PageID # 15-16) *See Taylor v. Univ. of the Cumberlands*, No. 6:16-cv-109-GFVT, 2017 WL 512643, at *14 (E.D. Ky. Feb. 7, 2017) (finding allegations of "worry" and "mental stress and concern" to be sufficiently severe to survive a motion to dismiss IIED claim); *Dukes v. Mid-Eastern Athletic Conference*, 213 F. Supp. 3d 887, 894 (W.D. Ky. 2016) (concluding that the plaintiff stated a plausible claim for IIED where she alleged that she no longer "fe[lt] comfortable working with" the defendant). The Court will therefore deny Defendants' motion to dismiss Barrios's IIED claim.

**B.     Defamation**

Barrios asserts defamation claims against Caleb Elmore, Dayna Elmore, and Rashidian. (D.N. 1-3, PageID # 26, 28) "Under Kentucky law, defamation consists of four elements: (1) a defamatory statement; (2) about the plaintiff; (3) that is published; and (4) that causes injury to reputation." *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)). Defendants argue that the alleged defamatory statements here are protected by either absolute or qualified privilege. (D.N. 6, PageID # 59) Barrios responds that neither privilege applies in this case. (*See* D.N. 8, PageID # 101)

The complaint alleges that Caleb Elmore "made false and derogatory statements about Dr. Barrios" that "have characterized [Barrios] as a sexual predator or a sexual harasser." (D.N. 1-3, PageID # 26) Barrios clarifies in response to the motion to dismiss that he is referring to Caleb Elmore's "allegations against [him] in [Elmore's] Title IX Complaint against Bellarmine." (D.N. 8, PageID # 103) With respect to Dayna Elmore and Rashidian, the complaint alleges that they "[wrote] letters to individuals at Bellarmine University containing false and defamatory statements

8

about Dr. Barrios," including one describing Barrios as a "sexual predator." (D.N. 1-3, PageID # 28; *see also* D.N. 8, PageID # 102)

"Kentucky law has long provided that 'statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry.'" *In re Lowenbraun*, 453 F.3d 314, 322 (6th Cir. 2009) (quoting *Heavrin v. Nelson*, 384 F.3d 199, 202 (6th Cir. 2004)). "This absolute privilege applies even if, as is the case here, the plaintiff alleges that the statements were false." *Id.*

> A communication must meet two requirements in order to be absolutely privileged: (1) "the communication must have been made 'preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of a judicial proceeding,'" and (2) "the communication must be material, pertinent, and relevant to the judicial proceeding."

*Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Ga.*, No. 15-161-DLB-HAI, 2017 WL 3122661, at *15 (E.D. Ky. July 21, 2017) (quoting *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 602 (Ky. 2011)). "A statement made preliminary to a judicial proceeding must 'ha[ve] some relation to a proceeding that is contemplated in good faith and under serious consideration.'" *Id.* (quoting *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir. 1990)). "The question of whether to apply judicial statements privilege is a matter of law to be decided by the court." *Id.*

    1.    **Statements in Title IX Complaint**

The statements in Caleb Elmore's complaint against Bellarmine were clearly made during the course of a judicial proceeding—namely, Elmore's lawsuit against Bellarmine. *See Cox v. First Fed. Savings Bank of Elizabethtown, Inc.*, No. 1:16-CV-00032-GNS, 2016 WL 4180000, at *2 (W.D. Ky. Aug. 5, 2016). Barrios argues, however, that the statements "are not material, relevant nor pertinent to the issues set forth in that litigation, namely whether Bellarmine retaliated

against him in violation of Title IX." (D.N. 8, PageID # 103)  This argument is not persuasive.  According to Barrios's complaint, the allegedly defamatory statements in Caleb Elmore's Title IX complaint against Bellarmine accuse Barrios of sexual harassment.  (*See* D.N. 1-3, PageID # 26)  Barrios's alleged sexual harassment certainly relates to Elmore's Title IX claim, as Elmore seeks to hold Bellarmine liable for failing to "take appropriate remedial action" in response to Barrios's harassment.  *Elmore*, Docket No. 29 (W.D. Ky. Mar. 11, 2018).  In fact, Barrios's alleged sexual harassment is a "key component" of Elmore's Title IX claim.  *See Rank v. Montgomery*, No. 2002-CA-001092-MR, 2003 WL 22519666, at *2 (Ky. Ct. App. Nov. 7, 2003).  The Court concludes that Caleb Elmore's statements about Barrios in his complaint against Bellarmine are absolutely privileged.  Barrios's defamation claim against Caleb Elmore will therefore be dismissed.  *See Aces High Coal Sales, Inc.*, 2017 WL 3122661, at *17.

    2.    **Statements in Letter to Bellarmine**

The statements made by Caleb Elmore's parents in their letter to Bellarmine University were not made during the course of a judicial proceeding.  However, it appears that they were made in anticipation of a proposed judicial proceeding.  In their January 12, 2018 letter to Bellarmine officials, Dayna Elmore and Rashidian gave the university "one last opportunity" to intervene before they "[went] to federal court." (D.N. 6-1, PageID # 88; *see* D.N. 1-3, PageID # 22)[2]  In particular, they urged the university to "drop" the case against their son for threatening Barrios and another professor, stating that the case was "ludicrous" and brought in retaliation for Elmore's report of sexual harassment against Barrios.  (D.N. 6-1, PageID # 88)  At the end of the letter, Elmore's parents reiterated that they would "see [Bellarmine] in court" if they did not "hear

---

[2] The Court may consider this letter in ruling on the motion to dismiss, as it is referred to in the complaint (D.N. 1-3, PageID # 22) and central to Barrios's defamation claim against Caleb Elmore's parents.  (*See id.*)  *See Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016).

from" Bellarmine. (*Id.*) And on January 25, 2018, Caleb Elmore filed suit in this Court against Bellarmine, presumably with his parents' support. *Elmore*, Docket No. 1 (W.D. Ky. Jan. 25, 2018). The Court therefore concludes that the statements in the letter were communications "preliminary to a proposed judicial proceeding" that was under "serious consideration." *See Aces High Coal Sales, Inc.*, 2017 WL 3122661, at \*15; *see also Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, No. 6:15-CV-161-DLB-HAI, 2017 U.S. Dist. LEXIS 115412, at \*19-23 (E.D. Ky. Apr. 24, 2017) (finding that demand letters were absolutely privileged where they "purport[ed] to offer a settlement in lieu of litigation").

Barrios raises three arguments as to why the statements in this letter are not absolutely privileged. First, Barrios asserts that Elmore's parents are not parties to the litigation that they were contemplating when they allegedly defamed him. (D.N. 8, PageID # 102) It is true that Elmore's parents are not named plaintiffs in the action against Bellarmine. However, they sent the letter to Bellarmine on behalf of their son, entitling them to invoke the absolute privilege. (D.N. 6-1, PageID # 88 ("We write as concerned parents . . . .")) *See Aces High Coal Sales, Inc.*, 2017 U.S. Dist. LEXIS 115412, at \*4-5, \*13-16 (finding that attorney's statements in demand letters were absolutely privileged when they were made "on behalf of" client contemplating suit); *see also Gen. Elec. Co.*, 916 F.2d at 1129 ("It is therefore immaterial whether [the defendant] claims this absolute privilege because of its special relationship as an investigator of the damage to the [property] or as a party protecting its own interests preliminary to a seriously contemplated judicial proceeding. In either case, [the] statements are absolutely privileged . . . .").

Second, Barrios argues that the statements in the letter to Bellarmine were not made to "interested parties," because the recipients of the letter "were neither involved in nor even aware of the investigations" into Elmore's alleged death threats or Barrios's alleged sexual harassment.

11

(D.N. 8, PageID # 102) The Eastern District of Kentucky has noted that "the privilege is strongest when . . . the disclosures are made only to persons with an interest in the proposed proceeding." *Aces High Coal Sales, Inc.*, 2017 U.S. Dist. LEXIS 115412, at *16. Even assuming that Bellarmine University's president and other officials who received the letter (D.N. 6-1, PageID # 88) were unaware of the investigations, they would surely have an interest in a proposed proceeding that would allege that their university retaliated against a student for complaining of sexual harassment. (*See id.*)

Finally, Barrios argues that "[t]he nature of [his] alleged conduct and Defendants' gratuitous characterization of him as a sexual predator had and have no relevance to whether Bellarmine retaliated against Elmore for filing [a] harassment claim." (D.N. 8, PageID # 103) The statements in the letter only need to have "some relation" to the contemplated proceeding, however. *See Gen. Elec. Co.*, 916 F.2d at 1127; *Aces High Coal Sales, Inc.*, 2017 WL 3122661, at *15. In the letter, Elmore's parents state that Barrios "took grossly inappropriate sexual interest" in their son and refer to Barrios as an "abuser" who "prey[s] on young men." (D.N. 6-1, PageID # 88) These statements have "some relation" to the contemplated proceeding against Bellarmine, which now alleges that Bellarmine failed to take proper steps in response to Barrios's conduct. *Elmore*, Docket No. 29 (W.D. Ky. Mar. 11, 2018). The Court therefore concludes that the statements in the letter are absolutely privileged,[3] and Barrios's defamation claims against Dayna

---

[3] Barrios states that "numerous media reports have materialized regarding this case" and suggests that "[i]f Elmore or his parents played an affirmative role in disseminating this information beyond the litigation, the alleged privilege is extinguished." (D.N. 8, PageID # 103) But Barrios failed to plead that Elmore or his parents disseminated this information to parties outside the litigation (or the anticipated litigation), and "statements protected by an absolute privilege do not lose their privilege simply because they are reported in the newspaper." *In re Lowenbraun*, 453 F.3d at 323 (citing *Massengale v. Lester*, 403 S.W.2d 701, 702 (Ky. 1966)).

Elmore and Rashidian will be dismissed. *See Aces High Coal Sales, Inc.*, 2017 WL 3122661, at *17.

**C.    Abuse of Process**

Barrios also asserts abuse-of-process claims against all defendants. (D.N. 1-3, PageID # 26-27) "An action for abuse of process is 'the irregular or wrongful employment of a judicial proceeding,' and has two essential elements: 1) an ulterior purpose, and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Murphy v. Bruner*, No. 5:17-CV-376-KKC, 2018 WL 2392510, at *5 (E.D. Ky. May 25, 2018) (quoting *Spirit Commc'ns Co. v. Leggett*, 307 S.W.3d 109, 114 (Ky. 2010)). Defendants argue that these claims should be dismissed because they did not institute a judicial proceeding against Barrios. (D.N. 6, PageID # 62) Barrios responds that the "tribunal" convened by Bellarmine to investigate Elmore's sexual-harassment complaint qualifies as a judicial proceeding for purposes of this claim. (D.N. 8, PageID # 107)

The complaint alleges that Elmore "misused the administrative process to advance his unrelated motives" "[i]n filing a false sexual harassment charge with Bellarmine University." (D.N. 1-3, PageID # 27) The complaint further alleges that Elmore "did not file [the charge] because he believed there was merit to the charge, but rather to shield himself from the University's investigation into his death threats against Dr. Barrios." (*Id.*) With respect to Elmore's parents, Dayna Elmore and Rashidian, the complaint alleges that they participated in their son's abuse of process and that they conspired to abuse civil proceedings "by funding and coordinating with lawyers to file and prosecute a sexual harassment claim against Dr. Barrios with Bellarmine University which [they] knew to be untrue." (*Id.*) According to the complaint, they so conspired

13

"in order to thwart Bellarmine's legitimate investigation into Elmore's death threats against Dr. Barrios." (*Id.*)

Kentucky courts have held that "the first and most essential element of an abuse of process claim is that there be an actual judicial process involved." *Wigginton v. Scanlon*, No. 2011-CA-000560-MR, 2012 WL 5305077, at *9 (Ky. Ct. App. Oct. 26, 2012) (quoting *Cromer v. Montgomery*, No. 2007-CA-002389-MR, 2009 WL 484999, at *5 (Ky. Ct. App. Feb. 27, 2009)). This Court and the Eastern District of Kentucky have routinely dismissed abuse-of-process claims in the absence of a judicial proceeding. *See Murphy*, 2018 WL 2392510, at *5 (holding that criminal investigation was insufficient to sustain abuse-of-process claim); *Woodcox v. United States*, No. 3:16-CV-00814-GNS, 2018 WL 1832972, at *3 (W.D. Ky. Apr. 17, 2018) (dismissing abuse-of-process claim based upon process initiated by Department of Education); *Griffin v. Jones*, No. 5:12-CV-00163, 2014 WL 4851785, at *12 (W.D. Ky. Sept. 29, 2014) (holding that attempt to convince law enforcement to press charges could not serve as the basis for abuse-of-process claim); *Garland v. Brewer*, No. 3:11-25-DCR, 2012 WL 1068737, at *4 (E.D. Ky. Mar. 29, 2012) (noting the absence of any authority "indicating that a claim for abuse of process would apply to internal or administrative proceedings before state entities"); *McQueen v. City of Dayton*, No. 05-132-DLB, 2007 WL 2463323, at *8 (E.D. Ky. Aug. 27, 2007) (dismissing abuse-of-process claim because allegations of spiteful governance "did not involve any judicial intervention or court proceedings"); *Flege v. Williamstown Independent Sch.*, No. 06-47-DLB, 2007 WL 679022, at *18-19 (E.D. Ky. Mar. 1, 2007) (dismissing abuse-of-process claim because trespass warning letters were secured "without invoking the legal process and without judicial authority"); *McCarthy v. KFC Corp.*, 607 F. Supp. 343, 345 (W.D. Ky. 1985) (holding that hearings before an unemployment-compensation officer did not qualify as judicial proceedings for purposes of abuse-

of-process claim). Barrios cites no authority, and the Court is aware of none, holding that an educational institution's complaint procedures amount to a judicial proceeding for purposes of an abuse-of-process claim under Kentucky law. The Court will therefore grant Defendants' motion to dismiss Barrios's abuse-of-process claims.[4]

## IV.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  Defendant Caleb Elmore's motion to consolidate (D.N. 4) is **DENIED** without prejudice.

(2)  Defendants' motion to dismiss (D.N. 6) is **GRANTED** in part and **DENIED** in part. Barrios's abuse-of-process (Counts V and VI) and defamation (Counts IV and VII) claims are **DISMISSED**. Barrios's remaining claims against Caleb Elmore (Counts I, II, and III) may proceed.

---

[4] The complaint also alleges that Defendants "abused the civil process by funding the filing of a civil lawsuit against Bellarmine which they [knew] to be unfounded and in which they malign and smear Dr. Barrios by name." (D.N. 1-3, PageID # 28)  This allegation, unlike the others in the complaint, involves a judicial proceeding.  However, it still fails to state a claim for abuse of process because "fil[ing] a lawsuit, albeit for ulterior purposes . . . is factually insufficient to support the tort of abuse of process." *Coach, Inc. v. Hayes & Co.*, No. 11-10-DLB, 2012 WL 1221873, at *5 (E.D. Ky. Apr. 10, 2012) (holding that the plaintiff failed to state a claim for abuse of process where she alleged an ulterior purpose for lawsuit but "failed to allege that [the defendant] ha[d] acted or made a threat that [was] not authorized by th[e] proceeding"); *see also Miller v. Javitch Block, LLC*, No. 3:15-CV-00746-CRS-CHL, 2017 WL 1658941, at *7 (W.D. Ky. May 1, 2017) ("Filing a groundless lawsuit may not constitute an abuse of process."); *Zeltiq Aesthetics, Inc. v. Medshare, Inc.*, No. 3:14-CV-213-CRS, 2015 WL 3447612, at *4 (W.D. Ky. May 28, 2015) ("Even assuming [that the plaintiff's claims were] completely without merit . . . , 'Kentucky courts have declined to find that a plaintiff has stated a claim for abuse of process where the defendant has done nothing more than file a lawsuit that lacked any legal basis for the purpose of retaliation.'" (citation omitted)).

(3)  Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is **REFERRED** to U.S. Magistrate Judge Regina S. Edwards, for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. Judge Edwards is further authorized to conduct a settlement conference in this matter at any time. The Magistrate Judge should note that *Elmore v. Bellarmine University*, No. 3:18-cv-53, also assigned to Judge Edwards, includes a common party and may present opportunities for coordination and efficient resolution of discovery disputes common to the two cases.

July 30, 2018

**David J. Hale, Judge**
**United States District Court**